## CIRCUIT COURT OF FAIRFAX COUNTY

Kirin Brewery of Am., L.L.C.

v.

Virginia Imports, Ltd.,
and Virginia Alcoholic
Beverage Control Board

August 27, 2002

Case No. (Law) 200104

BY JUDGE JANE MARUM ROUSH

This case arises under Virginia's Beer Franchise Act, Virginia Code §§ 4-118.3, *et seq.* (the "Act"). The parties to this case are Kirin Brewery of America, L.L.C., a "brewery" ("Kirin"); Virginia Imports, Ltd., a "wholesaler" ("Virginia Imports"); and the Virginia Alcoholic Beverage Control Board (the "Board"). The matter came before the Court on March 22, 2002, upon Kirin's appeal of a final decision of the Board holding that Kirin acted without good cause and in bad faith in terminating the distributorship agreement between Kirin and Virginia Imports. The Court has now had the opportunity to consider fully the briefs and the arguments of counsel, the record before the Board, and the applicable statutes. For the reasons stated below, the Court will remand this case to the Board for dismissal.

*Preliminary Matter*

On May 1, 2002, Kirin moved for leave to supplement the record in this case. Under Virginia Code § 2.2-4027, this Court must determine issues of fact from the agency record. Because the affidavit that Kirin seeks to add to the record was not included in the agency record in this case, I have not considered it.

*Facts and Agency Proceedings*

Kirin and Virginia Imports had a long-standing "agreement," as defined by Va. Code § 4.1-500, by which Virginia Imports was authorized to distribute certain brands of Kirin beer in Northern Virginia.

In 1999, Kirin advised Virginia Imports that Kirin was dissatisfied with several aspects of Virginia Imports' performance. On August 3, 1999, Kirin began the statutory termination process pursuant to Va. Code § 4.1-506 when it notified Virginia Imports of Kirin's intent to terminate the distributorship agreement. The termination letter set forth several grounds for termination, including Virginia Imports' sales of Kirin beer outside Virginia Imports' designated territory, failure to remove out-of-code (stale) beer from retail shelves, failure to follow Kirin's freshness policy, and several other sales performance issues. Kirin complied with Va. Code § 4.1-506(A) by sending a copy of the termination letter to the Board.

On October 4, 1999, Virginia Imports sent a letter to Kirin asserting that Virginia Imports cured the deficiencies cited in the termination letter. Virginia Imports, however, did not send a copy of its cure letter to the Board, in contravention of Va. Code § 4.1-506(B), which provides that "[a] copy of the notice shall be mailed at the same time to the Board." Thus, the Board was not notified that Virginia Imports was attempting to cure the deficiencies Kirin identified.

On October 22, 1999, having received Virginia Imports' cure letter, Kirin requested a hearing before the Board pursuant to Va. Code § 4.1-506(D) on the issue of whether Virginia Imports had cured the deficiencies and whether Kirin had "good cause" to terminate the distributorship. In its October 22, 1999, letter, Kirin expressed its continued dissatisfaction with "out of code beer and ... [Virginia Imports'] poor service."

By letter of February 9, 2000, the Secretary of the Board (the "Secretary") wrote Kirin as follows:

Our records indicate that by letter dated August 3, 1999, your company gave notice to Virginia Imports, Ltd., of your intent to terminate your agreement designating Virginia Imports, Ltd., as the wholesale distributor of Kirin brands in certain territories in Virginia. More than ninety days have now passed since that notice, and we have received neither a notice from the wholesaler that it has taken action to rectify the conditions constituting the reason for the termination, nor a request for a hearing on the issue of reasonable cause. Therefore, under the provisions of the Beer Franchise Act, the agreement between Kirin and Virginia Imports, Ltd., was effectively terminated ninety days after the August 3, 1999, notice.

Kirin is free to appoint other distributors for the territories formerly held by Virginia Imports, Ltd.

In response, Kirin wrote to the Secretary on February 10, 2000, indicating that Kirin was designating Anheuser-Busch, Inc., as Kirin's distributor for Virginia.

Virginia Imports asked the Secretary temporarily to suspend the effectiveness of his February 9, 2000, letter. That request was not granted. Similarly, the Board refused to reinstate the distributorship agreement between Kirin and Virginia Imports to maintain the status quo.

Virginia Imports protested the Secretary's actions. On April 17, 2000, the Secretary referred the matter for a hearing. The hearing panel found that the primary reason advanced by Kirin for its termination of the agreement was Virginia Imports' failure to comply with Kirin's freshness policy. The hearing panel reasoned that "although conceptually an out-of-code policy may be entirely reasonable, the manner in which this policy was enforced against Virginia Imports was unreasonable, and, indeed, unattainable." Accordingly, the hearing panel concluded that Kirin failed to prove that it imposed a "reasonable and material requirement" on the wholesaler as required by Va. Code § 4.1-505 and that "good cause" existed for its termination of the agreement. The hearing panel held that, even if Kirin's freshness policy were reasonable, Virginia Imports had substantially complied with the policy. The hearing panel concluded that Kirin acted in bad faith in terminating the agreement because, *inter alia*, Kirin only began visiting retail accounts and finding out-of-code beer after Virginia Imports repeatedly refused Kirin's offers to purchase the distribution rights for Kirin beer. The hearing panel reasoned that a brewery cannot have good cause for termination in the absence of good faith.

Both parties appealed the hearing panel's decision to the Board. On September 26, 2001, the Board issued its Final Order. The Board overruled the hearing panel's decision in part, finding that Kirin had instituted a reasonable freshness policy for its products and noting that:

> The hearing panel appears to adopt a theory that a brewery terminating a franchise agreement is guilty of bad faith under the Beer Franchise Act if it possesses a motive which does not amount to good cause for termination under the Act, even if it has made reasonable and material requirements with which the wholesaler has not substantially complied. The Board does not adopt this interpretation of the Act's requirements.

Board Final Order at 3. The Board found that Virginia Imports had substantially complied with Kirin's freshness policy and, thus, that Kirin lacked good cause to terminate Virginia Imports. The Board further found Kirin guilty of bad faith "in proceeding to terminate its agreement with Virginia Imports in February 2000, even though it was on notice that Virginia Imports had claimed to have taken corrective action with respect to all the causes for termination." As a remedy, the Board ordered Kirin to pay Virginia Imports' reasonable costs and attorney's fees.

### Standard of Review

This appeal arises under Va. Code § 4.1-509, which provides for review by the circuit court pursuant to the Administrative Process Act, Va. Code §§ 2.2-4000, *et seq.* Va. Code § 2.2-4027 provides that "the duty of the court with respect to issues of fact shall be limited to ascertaining whether there was substantial evidence in the agency record upon which the agency as the trier of facts could reasonably find them to be as it did." The court must "take due account of the presumption of official regularity, the experience and specialized competence of the agency, and the purposes of the basic law under which the agency has acted." Va. Code § 2.2-4027. The Supreme Court of Virginia has stated that:

> The "substantial evidence" standard, adopted by the General Assembly, is designed to give great stability and finality to the fact-findings of an administrative agency. The phrase "substantial evidence" refers to such relevant evidence as a reasonable mind *might* accept as adequate to support a conclusion. Under this standard,

applicable here, the court may reject the agency's findings of fact only if, considering the record as a whole, a reasonable mind would *necessarily* come to a different conclusion.

*Va. Real Estate Comm. v. Bias*, 226 Va. 264, 269, 308 S.E.2d 123 (1983) (emphasis in original) (internal citations omitted).

Kirin, as the "party complaining of agency action," bears the burden of proving an error of law by the Board. Va. Code § 2.2-4027. The statute provides that:

> Such issues of law include: (i) accordance with constitutional right, power, privilege, or immunity, (ii) compliance with statutory authority, jurisdiction limitations, or right as provided in the basic laws as to subject matter, the stated objectives for which regulations may be made, and the factual showing respecting violations or entitlement in connection with case decisions, (iii) observance of required procedure where any failure therein is not mere harmless error, and (iv) the substantiality of the evidentiary support for findings of fact.

Va. Code § 2.2-4027. The Court of Appeals has stated that:

> [W]hen deciding whether an agency has followed proper procedures or complied with statutory authority ... an inquiry into whether there is substantial evidence in the record to support findings of fact of an agency is wholly inappropriate. Indeed, even though an agency's findings of fact may be supported by substantial evidence in the record, it may be subject to reversal because the agency failed to observe required procedures or to comply with statutory authority. Thus, where the legal issues require a determination by the reviewing court whether an agency has, for example, accorded constitutional rights, failed to comply with statutory authority, or failed to observe required procedures, less deference is required and the reviewing courts should not abdicate their judicial function and merely rubber-stamp an agency determination.

*Johnston-Willis v. Kenley*, 6 Va. App. 231, 243, 369 S.E.2d 1 (1988) (internal citation omitted).

*Va. Code § 4.1-506*

The Act provides specific procedures for the termination of an agreement between a brewery and a wholesaler. Va. Code § 4.1-505 states that a brewery may not terminate a distributorship agreement without good cause and must comply with the notice provisions of § 4.1-506. Va. Code § 4.1-506 provides, in pertinent part, as follows:

A. ... [A] brewery shall provide a wholesaler at least ninety days' prior written notice of any intent to amend, terminate, cancel, or not renew any agreement. The notice, a copy of which shall be mailed at the same time to the Board, shall state all the reasons for the intended amendment, termination, cancellation, or nonrenewal.

B. Where the reason relates to a condition or conditions which may be rectified by action of the wholesaler, he shall have sixty days in which to take such action and shall, within the sixty-day period, give written notice to the brewery if and when such action is taken. A copy of the notice shall be mailed at the same time to the Board. If such condition has been rectified by action of the wholesaler, then the proposed amendment, termination, cancellation, or nonrenewal shall be void and without legal effect. However, where the brewery contends that action on the part of the wholesaler has not rectified one or more of such conditions, the brewery shall within fifteen days after the expiration of such sixty-day period request a hearing before the Board to determine if the condition has been rectified by action of the wholesaler....

D. Upon request in writing within the ninety-day period provided in subsection A from such brewery or wholesaler for a hearing, the Board shall, after notice and hearing, determine if the action of the wholesaler has rectified the condition or, as the case may be, if good cause exists for the amendment, termination, cancellation, or nonrenewal of the agreement.

E. In any proceeding brought pursuant to this section in which the existence of good cause is an issue, the brewery shall have the burden of proving the existence of good cause. Where a petition is made to the Board in a timely manner for a determination, the agreement in question shall continue in effect pending the Board's decision and any judicial review thereof, except in any case in which the Board makes a finding that there is good cause, as defined in § 4.1-505, for the amendment, termination, cancellation, or nonrenewal, in which case

the brewery may, unless otherwise ordered by a court of record, discontinue the agreement in question.

Va. Code § 4.1-506.

## Discussion

The central issue in this case is whether the Board had authority to hold hearings in this dispute and render its final order, when Virginia Imports neither notified the Board that it was attempting to cure the deficiencies nor requested a hearing on the sufficiency of its cure within the statutory period.

Virginia Imports and the Board argue that the Secretary's February 9, 2000, letter was an obvious error. They maintain that Kirin should have known that the Secretary erred in declaring that the agreement was terminated by statute and that Kirin could appoint a new distributor. They urge this Court to affirm the Board's finding that Kirin acted in bad faith by relying on the letter.

The record does not contain evidence that the Secretary's letter was a mistake. Virginia Imports failed to comply with the statutory requirement that it mail a copy of its notice of intent to cure to the Board. Virginia Imports was required to send its cure letter to the Board in order to notify the Board that it was attempting to cure and that the issue of the sufficiency of its attempt to cure might require adjudication by the Board. In failing to give such notice to the Board, Virginia Imports failed to preserve its right to contest the termination before the Board. The Secretary thus correctly determined that the distributorship agreement was effectively terminated by operation of law. Tellingly, the Secretary never rescinded the letter that both Virginia Imports and the Board now claim was an obvious error.

The Court finds that there was nothing unreasonable about Kirin's reliance on the Secretary's letter. Kirin should not be required to second-guess the Secretary's interpretation of the Act. The Secretary's letter ended the termination proceeding before the Board in this matter and rendered moot Kirin's earlier request for a hearing. The Secretary was without authority to revive the dispute over two months later by referring the matter to the Board to conduct hearings. Simply put, there was no matter before the Board on April 17, 2000, to be referred for a hearing.

Even if the Board were authorized to adjudicate the matter of the termination of the parties' agreement, the Court concludes that the Board erred in finding that "Kirin's termination of its franchise agreement with Virginia Imports was without good cause, in violation of the Beer Franchise Act."

Kirin contends it did not terminate the agreement; it was effectively terminated by the operation of law as stated in the Secretary's letter. The Board and Virginia Imports argue that Kirin itself terminated the agreement in violation of the Act.

The Court agrees with Kirin. It is not disputed that Kirin initiated the statutory termination process pursuant to Va. Code § 4.1-506. Nevertheless, Kirin appointed a new distributor only after the Secretary advised Kirin that Kirin's agreement with Virginia Imports had been effectively terminated by operation of law. Indeed, Kirin was required to appoint a new distributor under Va. Code §§ 4.1-208 and 4.1-503. Kirin itself did not terminate or cancel its agreement with Virginia Imports. Thus, the Board erred in determining that Kirin terminated the agreement.

Even if Kirin had terminated the agreement with Virginia Imports, the record lacks substantial evidence to support the Board's finding that Kirin lacked good cause to terminate the agreement. This Court will defer to the Board's findings regarding the issue of Virginia Imports' sale of out-of-code or stale beer. The Board, however, failed to address several of the other causes for termination Kirin cited.

Kirin's termination letter of August 3, 1999, set forth numerous deficiencies in Virginia Imports' performance. In addition to the out-of-code sales issue, the letter complained of "sales of beer outside of designated territory," "sales of brands not assigned to [Virginia Imports]," "failure to keep chain store reports," "failure to monitor pricing data on competitors' products," and other alleged sales performance deficiencies.

Kirin identified the sale of out-of-code beer as the "most egregious" of Virginia Imports' deficiencies. Virginia Imports and the Board contend that Kirin waived the other identified deficiencies in its letter of October 22, 1999, requesting a hearing and by its counsel's representations to the hearing panel that the issue of stale beer was the most important issue and one for which it would have terminated the contract even in the absence of the other alleged deficiencies.

The Board found in its final order that "the only condition noted [in Kirin's October 22, 1999, letter] as not rectified by Virginia Imports was that of out-of-code beer in the market." That finding is clearly erroneous. Kirin's October 22, 1999, letter cited the continuing problem with out-of-code beer. It also referred to Kirin's "dissatisfaction with [Virginia Imports'] poor service." The letter cited previous letters and memos to Virginia Imports regarding "point of sale issues and ... the drop off in sales of Kirin beer in the market," as well as the fact that Kirin had "not seen any material improvement in

service." Kirin's letter referred to memos regarding "problems which continued in the market" and requested "a hearing on these issues."

The Court concludes that Kirin did not waive its complaints regarding issues other than freshness by failing to enumerate all such issues in its October 22, 1999, letter or by stating that the freshness issue was its primary concern.

The Board failed to address and rule upon all of the issues raised by Kirin with respect to its grounds for termination of the agreement, most notably Kirin's complaints about deficient sales reports and sales efforts with chain stores. Therefore, the record lacks substantial evidence to support the Board's finding that Kirin was without good cause for terminating the agreement.

The record does not contain substantial evidence to support the Board's finding of bad faith on Kirin's part. The final order of September 26, 2001, states as follows:

> The Board does find ... that Kirin is guilty of bad faith in proceeding to terminate its agreement with Virginia Imports in February 2000, even though it was on notice that Virginia Imports had claimed to take corrective action with respect to all the causes for termination. Such action triggered statutory provisions requiring a hearing and providing for continuation of the agreement pending the Board's decision and any judicial review thereof. ... While the Secretary to the Board was unaware of Virginia Imports' claim of corrective action due to the failure of Virginia Imports to forward a copy of its letter to the Board, Kirin knew at the time it requested a letter allowing it to proceed to appoint a new wholesaler in the territory formerly served by Virginia Imports that such an action was not statutorily permitted.

Board Final Order at 3-4. There is no evidence in the record that Kirin requested a letter allowing it to appoint a replacement for Virginia Imports. Nor does the record contain any evidence to support the Board's findings regarding what the Secretary knew (or did not know) or what Kirin knew in February of 2000.

This Court concludes that the Board erred in finding that Kirin acted in bad faith where Kirin reasonably relied on an official communication from the Secretary of the Board.

*Conclusion*

For the foregoing reasons, Kirin's petition will be granted and the matter will be remanded to the Board for dismissal.