COURT OF APPEALS OF VIRGINIA

Present:    Judges Kelsey, Petty and Senior Judge Fitzpatrick
Argued at Alexandria, Virginia

VIRGINIA IMPORTS, LTD.

v.       Record No. 2400-06-4

KIRIN BREWERY OF AMERICA, LLC AND
VIRGINIA ALCOHOLIC BEVERAGE
  CONTROL BOARD                                              OPINION BY
                                                  JUDGE D. ARTHUR KELSEY
KIRIN BREWERY OF AMERICA, LLC                        SEPTEMBER 18, 2007

v.       Record No. 2464-06-4

VIRGINIA IMPORTS, LTD. AND
  VIRGINIA ALCOHOLIC BEVERAGE
  CONTROL BOARD


                  FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                            Jane Marum Roush, Judge

            Walter A. Marston, Jr. (Kevin R. McNally; Reed Smith LLP, on
            briefs), for Virginia Imports, Ltd.

            Warwick R. Furr, II (Thomas M. Brownell; Holland & Knight LLP,
            on briefs), for Kirin Brewery of America, LLC.

            Carla R. Collins, Assistant Attorney General (Robert F. McDonnell,
            Attorney General; Francis S. Ferguson, Deputy Attorney General, on
            brief), for the Virginia Alcoholic Beverage Control Board.


        These consolidated appeals arise out of a franchisor-franchisee dispute governed by the

Beer Franchise Act, Code §§ 4.1-500 to 4.1-517.  Like most other franchise statutes, the Beer

Franchise Act grants franchisees legal rights beyond those consensually conferred by the

franchise agreement.  Among those statutory rights is a prohibition on breweries "unilaterally"

terminating the agreement without proper "notice" under Code § 4.1-506 and "good cause"

under Code § 4.1-505.  Disputes over the notice and good cause requirements are resolved, at

least in the first instance, by the Virginia Alcoholic Beverage Control Board.  Appeals of the

ABC Board's rulings proceed under the Administrative Process Act, Code § 2.2-4000 *et seq.*, first to the circuit court and then to the appellate courts.

This particular dispute has run its full course once already. In Virginia Imports, Ltd. v. Kirin Brewery of America, LLC, 41 Va. App. 806, 589 S.E.2d 470 (2003) (Virginia Imports I), we reversed in part and remanded the circuit court's ruling which, in turn, had reversed the ABC Board's ruling. On remand from Virginia Imports I, the circuit court referred the continuing dispute to the ABC Board for further proceedings consistent with our opinion. The ABC Board rendered another decision; both sides appealed the ABC Board's decision to the circuit court; and both sides have appealed the circuit court's decision to us.

We now affirm.

I.

Kirin Brewery of America, LLC had a distributor agreement with Virginia Imports, Limited, a Virginia beer wholesaler, for over twenty years. Kirin notified Virginia Imports in 1999 of its intent to terminate the agreement because Virginia Imports allegedly had failed to comply with Kirin's policy of beer freshness, improperly sold Kirin beer outside the contractual sales territory, and exhibited substandard sales and service performance. As required by the Beer Franchise Act, Kirin sent a copy of the termination notice to the ABC Board. See Code § 4.1-506(A). According to statute, the notice had to be given at least 90 days prior to Kirin's "intended" termination. Id.

The Beer Franchise Act allowed the wholesaler-franchisee, Virginia Imports, to render the brewery's termination notice "void and without legal effect" by curing the conditions supporting the notice and by giving a written response to the termination notice letter within 60 days with a copy of the response letter mailed to the ABC Board. See Code § 4.1-506(B). Virginia Imports sent Kirin its response letter a day after the expiration of the 60-day deadline

but neglected to send a copy to the ABC Board. Kirin, however, requested a hearing seeking a determination from the ABC Board that it had good cause to terminate the agreement.

The Secretary of the ABC Board, unaware that Virginia Imports had responded (albeit a day late) to Kirin's termination notice, wrote Kirin a letter. "Our records indicate," the Secretary advised Kirin, that "your company gave notice to Virginia Imports, Ltd., of your intent to terminate your agreement" with Virginia Imports. "More than ninety days have now passed since that notice, and we have received neither a notice from the wholesaler that it has taken action to rectify the conditions constituting the reason for the termination, nor a request for a hearing on the issue of reasonable cause." As a consequence, the Secretary concluded, the agreement "was effectively terminated" ninety days after Kirin's termination notice. The Secretary ended his letter with the assurance that "Kirin is free to appoint other distributors" in place of Virginia Imports.

The day after receiving the Secretary's letter, Kirin entered into a new franchise agreement with another distributor. Kirin did not notify the ABC Board of Virginia Imports's response letter. Nor was Virginia Imports informed of its mistake in not sending a copy of its response letter to the ABC Board.

After receiving the Secretary's letter, Virginia Imports requested reinstatement of the distributor agreement based upon the mistake. The ABC Board refused to reinstate the franchise but held nonetheless that no good cause justified Kirin's termination of the agreement. Based on that finding, the ABC Board ordered Kirin to compensate Virginia Imports for the value of the terminated agreement. See Code § 4.1-508(A) (authorizing monetary remedies in addition to reinstatement). Finding Kirin to have acted in "bad faith," the ABC Board also ordered Kirin to pay Virginia Imports's attorney fees. See Code § 4.1-509.

Kirin appealed to the circuit court pursuant to the Virginia Administrative Process Act, Code § 2.2-4026. In a cascading series of alternative rulings, the circuit court held first that the ABC Board had no authority to decide the case. It lacked authority because Virginia Imports failed to mail its response letter to the ABC Board within 60 days or to request a hearing within 90 days as the notice statute required. That procedural default, the circuit court held, precluded the ABC Board from adjudicating any aspect of the dispute.

"*Even if* the Board were authorized to adjudicate the matter," the circuit court further held, it "erred in determining that Kirin terminated the agreement." Kirin Brewery of Am., LLC v. Va. Imps, Ltd., 60 Va. Cir. 151, 157-58 (Fairfax County 2002) (emphasis added). The franchise was "terminated by operation of law," id., the court stated, just as the Secretary's letter implied. "Kirin itself did not terminate or cancel its agreement with Virginia Imports," id., the court concluded.

"*Even if* Kirin had terminated" the agreement, the circuit court again held in the alternative, the administrative record did not support the ABC Board's determination that no good cause existed to terminate the agreement. Id. at 158 (emphasis added). The court found that the ABC Board's decision focused only on one good-cause allegation (the stale-beer complaint) and ignored the other grounds Kirin asserted in its notice of termination.

Finally, the circuit court rejected the ABC Board's award of attorney fees. The record, the court stated, could not support the conclusion that Kirin acted in bad faith because Kirin merely relied on the Secretary's letter, which correctly spoke of the distributor agreement being "effectively terminated" as a matter of law. Kirin's reliance on the Secretary's letter, the court reasoned, could not be characterized as bad faith.

Virginia Imports appealed. A panel of this Court held that Virginia Imports's "failure to mail a copy of its cure notice to the ABC Board under Code § 4.1-506(B) or request a hearing

- 4 -

under Code § 4.1-506(D)" created no jurisdictional defect divesting the ABC Board of jurisdiction. Virginia Imports I, 41 Va. App. at 826, 589 S.E.2d at 480. The panel agreed with the circuit court that the ABC Board erred by addressing only one of Kirin's purported causes for termination (the stale-beer allegation). The panel concluded, however, that the proper remedy was for the circuit court to remand the case back to the ABC Board for consideration of the other good-cause grounds asserted by Kirin. Id. at 831-32, 589 S.E.2d at 482-83. Finally, on the issue of attorney fees, the panel affirmed the circuit court's holding that Kirin did not act in bad faith in terminating the distributor agreement.

The panel's ruling briefly addressed the circuit court's alternative holding that Kirin never terminated the agreement because it was extinguished by operation of law. The subject, however, came up only in the portion of the opinion addressing the ABC Board's authority to examine Kirin's good-cause reasons for issuing its termination notice. As the panel noted:

> Kirin argues the circuit court correctly held that, because Virginia Imports failed to comply with the mailing requirement of Code § 4.1-506(B) or request a hearing under Code § 4.1-506(D), the distributorship agreement between Kirin and Virginia Imports *ended by operation of law* ninety days after Kirin sent its August 3, 1999 termination letter to Virginia Imports. Thus, Kirin argues, the ABC Board *did not have authority to hold hearings and render a decision* in this case.

Virginia Imports I, 41 Va. App. at 820, 589 S.E.2d at 477 (emphasis added).

Rejecting this thesis, the panel overturned the circuit court's principal holding that the ABC Board lacked authority to adjudicate the good-cause issue and ordered the ABC Board on remand to examine the good-cause grounds asserted by Kirin that had not been previously ruled upon in the administrative process. The panel opinion defines the scope of the remand this way:

> Accordingly, we . . . *remand this matter to the circuit court for remand to the ABC Board* with instructions to consider, upon the existing evidentiary record, all of the deficiencies asserted by Kirin in its August 3, 1999 letter, except the deficiency already addressed and ruled upon relating to Kirin's freshness policy, and

- 5 -

> to determine with respect to each of those previously unaddressed deficiencies whether Kirin satisfied its burden of proving it had good cause to terminate the subject distributorship agreement.

Virginia Imports I, 41 Va. App. at 831-32, 589 S.E.2d at 482-83 (emphasis added). The conclusion of the opinion repeated the limited scope of the remand: "In sum, we . . . remand the case to the circuit court for remand to the ABC Board for further proceedings consistent with this opinion." Id. at 834-35, 589 S.E.2d at 484. Similarly, the mandate stated that "this matter is *remanded to the trial court for remand to the ABC Board* for further proceedings consistent with the views expressed in the written opinion of this Court." (Emphasis added.)

Seeking an *en banc* as well as a panel rehearing, Kirin asserted the panel overlooked the operation-of-law termination point. Because it could be liable only for unilaterally terminating the agreement (and not for being a mere bystander to a termination by operation of law), Kirin claimed the panel's decision ordered a futile evidentiary remand. "Because Kirin did not terminate the agreement," Kirin argued, "regardless of cause, there is nothing for the ABC Board to adjudicate." Kirin's Pet. for Reh'g at 4-5 (No. 2751-02-4). Both the *en banc* Court and the panel declined to rehear the appeal.[1]

About the same time as the panel decision and the denial of Kirin's rehearing request, the United States District Court for the Eastern District of Virginia issued a ruling in a fraud suit filed by Virginia Imports against Kirin arising out of the same distributor termination episode. See Virginia Imps, Inc. v. Kirin Brewery of Am. LLC, 296 F. Supp. 2d 691 (E.D. Va. 2003). The district court granted summary judgment to Kirin, finding the applicable statute of limitations barred Virginia Imports's fraud allegations.

---

[1] In Virginia Imports I, Kirin's appellate brief couched the termination by operation of law argument as a rationale for why the ABC Board had no authority to hear the case — not as an alternative holding which, by itself, mooted all other issues. The panel answered the argument exactly as Kirin presented it on brief.

On remand to the circuit court, Kirin objected to any further remand to the ABC Board, claiming the circuit court's prior ruling (that Kirin did not unilaterally terminate) survived the appellate panel's decision. That undisturbed circuit court ruling, Kirin contended, mooted every issue in the case and rendered any further remand illusory. As Kirin put it to the circuit court: "Because Kirin did not terminate the agreement (regardless of whether it had 'good cause' to do so), there is nothing for the ABC Board to adjudicate. In fact, it is precluded from doing so by law of the case, and any decision to the contrary would be reversible error." Kirin's Mot. to Dismiss/Plea in Bar Br. at 10. Kirin's argument, in other words, was that the law-of-the-case doctrine has the anomalous effect of *requiring* the circuit court to disobey the panel's mandate in Virginia Imports I.

Kirin also argued the federal district court's summary judgment order barred any further litigation over the entire dispute. The fraud claim and the statutory action under the Beer Franchise Act, Kirin claimed, were essentially the same. Asserting claim preclusion principles of *res judicata*, Kirin contended the federal district court's statute-of-limitations ruling barred both the circuit court and the ABC Board from exercising any further jurisdiction.

The circuit court nonetheless remanded the case to the ABC Board for further proceedings as directed by the Virginia Imports I mandate. On remand, the ABC Board reviewed Kirin's evidence of good cause and found (as it had already with respect to the stale-beer allegation) none of it convincing. The ABC Board, however, refused to address the question of bad faith and thus declined to make an award of attorney fees — reasoning that Virginia Imports I had ended any further inquiry into that issue. On appeal to the circuit court, the ABC Board's decision was upheld despite Kirin's continued assertion that the case should have never been remanded to the ABC Board in the first place.

Kirin now appeals the circuit court's decision affirming the ABC Board's finding that Kirin did not have good cause to terminate the distributor agreement. Virginia Imports appeals the circuit court's decision affirming the ABC Board's refusal to award attorney fees against Kirin for bad faith. We consolidated both appeals for purposes of oral argument and decision.

II.

A. KIRIN'S APPEAL OF NO-GOOD-CAUSE-TERMINATION HOLDING

Kirin challenges the circuit court's affirmance of the ABC Board's finding that Kirin terminated the agreement without good cause. For three reasons, Kirin argues, we should reverse this finding:

(i)     The circuit court was right all along — Kirin did not unilaterally terminate the agreement; that happened by operation of law. Because Virginia Imports I did not address this issue, the law-of-the-case doctrine required the circuit court to either disobey the remand mandate or, failing that, to reverse the ABC Board for deciding the case against Kirin on remand.

(ii)    The Beer Franchise Act, Code § 4.1-517(B), implies in law a "reasonableness" qualification on "every term and provision" of the distributor agreement. The ABC Board's decision, affirmed by the circuit court, violated this provision.

(iii)   Under claim preclusion principles of *res judicata*, the federal district court's summary judgment in the fraud action barred any remand proceedings before the ABC Board and precludes any award against Kirin under the Beer Franchise Act.

We find no legal merit in any of these arguments.

(i) *Unilateral Termination & Law of the Case*

Kirin's first argument employs this tiered syllogism: The circuit court previously held (as one of its three alternative holdings) that Kirin did not unilaterally terminate the distributor agreement — that happened by operation of law. Virginia Imports did not appeal that specific issue, choosing instead only to contest the circuit court's other two holdings. Virginia Imports I thus never ruled on the point, making the circuit court's ruling binding law of the case. Thus, the

- 8 -

ultimate conclusion: Because Kirin did not unilaterally terminate the distributor agreement, it does not matter whether Kirin had good cause to do something it never did.[2]

The problem with Kirin's argument is that, if true, it proves too much. If law of the case precludes us from doing anything other than reversing the circuit court and entering final judgment in Kirin's favor, then, for exactly the same reason, it would have precluded Virginia Imports I from issuing a wholly meaningless mandate requiring the ABC Board to further examine Kirin's allegations of good cause. To be sure, if Kirin were right, Virginia Imports I would have stated that the whole termination dispute is simply beside the point because the circuit court held Kirin never terminated the distributor agreement and Virginia Imports never challenged that holding.

For the same reason, if the law-of-the-case doctrine precluded the circuit court from remanding the case to the ABC Board (as Kirin argued below), then the circuit court would have had no option but to disobey our mandate — an appellate order specifically directing the circuit court to remand the case to the ABC Board. Circuit courts have no such authority. "A trial court has no discretion to disregard our lawful mandate. When a case is remanded to a trial court from an appellate court, the refusal of the trial court to follow the appellate court mandate constitutes reversible error." Rowe v. Rowe, 33 Va. App. 250, 258, 532 S.E.2d 908, 912 (2000).[3]

The mandate rule, itself an application of the law-of-the-case doctrine, forecloses further litigation of "issues expressly or impliedly decided by the appellate court." United States v. Bell, 5 F.3d 64, 66 (4th Cir. 1993). Even read in the most critical light, Virginia Imports I at least "impliedly decided," id., against Kirin on its termination-by-operation-of-law argument and

---

[2] We agree with Kirin as to the proper interpretation of the circuit court's alternative holding. See *supra* at 4. It was not, as the circuit court later described it, a mere *dictum* taken out of context by Kirin.

[3] We acknowledge exceptions exist to this rule. See generally Invention Submission Corp. v. Dudas, 413 F.3d 411, 414-15 (4th Cir. 2005). None apply in this case, however.

similarly rejected the circuit court's alternative holding on this ground. The law-of-the-case doctrine, especially its mandate rule iteration, defeats rather than supports Kirin's position.

For similar reasons, we do not read the text of Virginia Imports I to be as indifferent to Kirin's termination-by-operation-of-law argument as Kirin asserts. It is true, we admit, that Virginia Imports I did not include a separate section in its analysis devoted solely to the circuit court's alternative holding that Kirin did not terminate the agreement. It is untrue, however, that Virginia Imports I wholly ignored the issue. As previously noted, the panel opinion addressed Kirin's argument as one of the grounds supporting Kirin's conclusion (accepted by the circuit court and adopted as its principal holding) that the ABC Board had no authority to address the termination dispute in the first place. The panel opinion necessarily rejected Kirin's assertion that it had not terminated the agreement by reversing the circuit court on this point and ordering the court to remand the case to the ABC Board for further consideration of Kirin's good-cause allegations.

It strikes us as perfectly understandable that Virginia Imports I would summarily reject (even if it did not more directly address) Kirin's assertion that "the ABC Board (not Kirin) effected the termination of the distribution agreement between Kirin and Virginia Imports." Kirin's Opening Br. at 2 (No. 2464-06-4). The ABC Board does not terminate agreements; it merely approves or disapproves terminations initiated by breweries. See generally 5 Gladys Glickman, Franchising § 4(C) (2007) (stating the Virginia ABC Board "has the responsibility of determining whether the termination provision of the statute has been violated"). Nor does the Beer Franchise Act terminate agreements by operation of law. Nothing in the statute suggests that distributor agreements automatically terminate of their own accord. The statute merely authorizes breweries to terminate if they can satisfy certain conditions. If the ABC Board Secretary's letter could be fairly understood to suggest otherwise, it was simply mistaken.

Kirin "unilaterally" terminated the distributor agreement, as that term is used in Code § 4.1-505, when it issued a termination notice and later (after receiving the Secretary's letter) treated the distributor agreement as a nullity. In the context of the Beer Franchise Act, the word "unilateral" simply means the act of one — as opposed to both — of the contracting parties. The term excludes bilateral terminations because they represent the consensual action of each of the contracting parties, thus mooting any need for an elaborate administrative process to protect the franchisee's right to object to terminations lacking good cause.[4]

(ii) *The Implied Contractual Duty of Reasonableness*

Kirin's second argument claims the ABC Board's decision violates "the statutory requirement of 'reasonableness.'" Kirin's Opening Br. at 22 (No. 2464-06-4). We agree the Beer Franchise Act rests upon the animating prop of reasonableness, both as a discrete requirement for each contractual term, Code § 4.1-517(B), and as a limitation on any damage award, Code § 4.1-508. Indeed, the good cause requirement for termination is itself an adaptation of objective principles of reasonableness. See generally United States v. Myers, 294 F.3d 203, 206 (1st Cir. 2002) (noting good cause "depends on objective reasonableness"); see also Umbarger v. Virginia Employment Comm'n, 12 Va. App. 431, 435, 404 S.E.2d 380, 383 (1991) (holding that courts "must first apply an objective standard to the reasonableness" of an employee's actions in order to assay "good cause").

---

[4] We are unpersuaded by Kirin's citation to Roman v. Dep't of Corrections, 808 A.2d 304 (Pa. Commw. Ct. 2002), and Miller v. Hedlund, 813 F.2d 1344 (9th Cir. 1987). Roman recognized that a party required by statute to do a certain act cannot be said to "unilaterally" have done it. See Roman, 808 A.2d at 310. We fail to see the relevance of that point here. Neither the Beer Franchise Act nor the ABC Board Secretary's letter required Kirin to terminate the distributor agreement. At no point did Kirin lose the legal capacity to withdraw its termination notice or to continue its contractual relationship with Virginia Imports. Miller provides even less support for Kirin's assertion, as it recognized that a party could be "compelled to comply unilaterally." Miller, 813 F.2d at 1350-51 (contrasting "unilateral" versus "concerted" activity under antitrust law). We need not accept or reject the reasoning of either case, however, because the Beer Franchise Act does not codify any notion of compulsory termination.

Kirin reasons that, because Virginia Imports I found Kirin did not act in bad faith and thus could not be punished with an award of attorney fees, by that same logic Kirin cannot be found to have terminated the distributor agreement without good cause. To us, this argument does not follow. Code § 4.1-509 authorizes an award of attorney fees against a party that "has acted in bad faith" in violating any provision of the Beer Franchise Act. One such provision is the termination provision, which requires that the party terminating the agreement do so only for "good cause" under Code § 4.1-505. Bad faith means more than merely the absence of good cause. A franchisor can rely on a bad cause for terminating an agreement but still act in good faith. Virginia Imports I adopted just that conclusion when it held Kirin's reliance on the ABC Board's letter precluded a finding of bad faith but nonetheless remanded the case for further review of Kirin's allegations of good cause in its termination notice.

(iii)   *Res Judicata — Claim Preclusion*

Finally, we need not examine Kirin's *res judicata* argument in any detail.[5]  A sufficient reason, dispositive in itself, is that the federal district court had no subject-matter jurisdiction to adjudicate the Beer Franchise Act statutory claim.[6] That claim can only be asserted before the ABC Board with further adjudicatory review reserved solely for the state courts under the Virginia Administrative Process Act. Unlike issue preclusion, a topic Kirin does not raise on

---

[5] The point should be distinguished from the "primary jurisdiction" doctrine, which authorizes a court to defer to certain agency adjudications. See The Country Vintner, Inc. v. Louis Latour, Inc., 272 Va. 402, 411, 634 S.E.2d 745, 750 (2006). That doctrine has no application to this appeal.

[6] Under settled principles, the "effect of a final decree is not only to conclude the parties as to every question actually raised and decided, but as to every claim which *properly belonged to the subject of litigation* and which the parties, by the exercise of reasonable diligence, *might have raised at the time*." Smith v. Holland, 124 Va. 663, 666, 98 S.E. 676, 676 (1919) (emphasis added). This could-have-litigated-should-have-litigated principle applies to the narrow "same evidence" test employed by Davis v. Marshall Homes, Inc., 265 Va. 159, 166, 576 S.E.2d 504, 507 (2003), and to the broader transactional approach adopted by Rule 1:6 (promulgated to supersede the holding in Davis, Kent Sinclair, Guide to Virginia Law & Equity Reform and Other Landmark Changes § 11.01 *et seq.*, at 245 (2006)).

appeal, claim preclusion can never apply when the ostensibly barred claim falls outside the subject-matter jurisdiction of the tribunal and thus could not have been adjudicated in the prior action. See Lloyd v. Am. Motor Inns, Inc., 231 Va. 269, 271, 343 S.E.2d 68, 69 (1986); see generally Restatement (Second) of Judgments § 26(1)(c) (1982).

In sum, we find no merit in the three arguments advanced by Kirin against the circuit court's decision to affirm the ABC Board's finding that Kirin terminated the distributor agreement without good cause.

### B. VIRGINIA IMPORTS'S APPEAL OF BAD-FAITH HOLDING

Virginia Imports asserts on appeal that the ABC Board and the circuit court both mistakenly ruled that Virginia Imports I precluded any further litigation over Kirin's alleged bad faith and thus unfairly precluded Virginia Imports from renewing its request for an award of attorney fees. Though Virginia Imports I affirmed the circuit court's reversal of the ABC Board's prior bad faith finding, Virginia Imports argues, the panel also remanded the case for further factfinding on good cause. As a consequence, Virginia Import reasons, the panel likewise contemplated within its mandate that the ABC Board would revisit the issue of bad faith on any ground found to be insufficient good cause for termination on remand.

Virginia Imports's argument is the inverse of the point made earlier by Kirin, when it argued that the panel's conclusion that Kirin did not act in bad faith necessarily meant it terminated the agreement with good cause. Once again, we see the concepts as related but analytically distinct. Virginia Imports I held Kirin did not act in bad faith and thus could not be liable for attorney fees. The affirmance was unqualified. It did not figure into the panel's remand instructions or its mandate. The only way the bad-faith topic could be considered an open issue is if it could be viewed as necessarily *implied* in the panel's remand of the good-cause

issue. We find no such implication and, thus, affirm the interpretation of Virginia Imports I

made by the ABC Board and circuit court.

Virginia Imports finds our reasoning inconsistent with Virginia Power v. Westmoreland-

LG&E Partners, 259 Va. 319, 323, 526 S.E.2d 750, 753 (2000), which states: "As explained in

Nassif v. Bd. of Supervisors of Fairfax County, 231 Va. 472, 481, 345 S.E.2d 520, 525 (1986),

'[w]hen we limit issues on remand we do so with words of limitation or restriction.'" We see no

such inconsistency. The scope-of-remand principle noted in Nassif applies only when an

appellant prevails on one point (thereby succeeding in obtaining an appellate reversal and

remand on this point) and the appellee seeks to raise on remand alternative reasons (never ruled

on by the trial court) for a judgment in his favor. In such cases:

> Unless we say otherwise, the slate is wiped clean, with the result
> that on remand the parties begin anew. It would serve no useful
> purpose, we think, to require a prevailing party [the appellee] to
> assign error to his failure to win on all points in order to protect his
> right to a full and complete trial should his apparent victory be
> reversed and the case remanded.

Nassif, 231 Va. at 480-81, 345 S.E.2d at 525.

Put another way, the Nassif principle has no application where the appellant *loses* on a

particular point in circuit court and the appellate court *affirms* the circuit court on that point,

incidentally reversing in part on some other point — which is what happened here. Virginia

Imports I stated that it "[a]ffirmed, in part, and reversed and remanded, in part." 41 Va. App. at

835, 589 S.E.2d at 484. We affirmed without qualification "the circuit court's ruling that the

record does not contain substantial evidence to support the ABC Board's finding that Kirin acted

in bad faith" in terminating the agreement. Id. at 834, 589 S.E.2d at 484. The part of the case

reversed and remanded was accompanied by "instructions to consider, upon the existing

evidentiary record," the previously unaddressed good-cause allegations. Id. at 831-32, 589

S.E.2d at 482. Having limited our reverse-and-remand mandate to this discrete topic, we left

- 14 -

open no opportunity for the litigants to continue litigating issues on which the circuit court had been unqualifiedly affirmed.

III.

The circuit court did not err in affirming the ABC Board's final decision in this case. Neither Kirin nor Virginia Imports has presented any legally viable reason for holding otherwise.

Affirmed.