COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:  Judges Beales, Athey and Senior Judge Haley
Argued at Fredericksburg, Virginia


ALICE JIN-YUE GUAN

v.      Record No. 1375-18-4

BING RAN

ALICE JIN-YUE GUAN

v.      Record No. 0597-19-4

BING RAN

ALICE JIN-YUE GUAN

v.      Record No. 0817-19-4

BING RAN

ALICE JIN-YUE GUAN

v.      Record No. 1057-19-4

BING RAN

MEMORANDUM OPINION[*] BY
JUDGE CLIFFORD L. ATHEY, JR.
APRIL 28, 2020


FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
James C. Clark, Judge

Wyatt B. Durrette, Jr. (Christine A. Williams; Durrette, Arkema,
Gerson & Gill, PC, on briefs), for appellant.

Christopher W. Schinstock (Kyle F. Bartol; Schinstock & Bartol,
PLLC, on brief), for appellee.


Alice Jin-Yue Guan ("Guan") appeals numerous final orders from the Circuit Court of

the City of Alexandria ("trial court") related to her divorce from Bing Ran ("Ran") and their

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

subsequent post-divorce agreement and amendments thereto, including, the impact the agreement and amendments have on the parties' business, Advanced Systems Technology and Management, Inc. ("AdSTM").  Guan contends that the trial court erred by (1) failing to follow this Court's mandate when this case was previously remanded to the trial court on February 7, 2017,[1] (2) relying on Ran's expert witness report and its calculations on remand, (3) failing to award Guan all of her attorney's fees following the remand hearing, (4) finding that Ran owned 51% of AdSTM, (5) finding that Guan breached the amended post-divorce agreement, and (6) finding that Guan improperly withdrew $2,294,000 from the accounts of AdSTM.  Ran assigns cross-error regarding the attorney's fees award.  We affirm the ruling of the trial court as to Guan's first three assignments of error and Ran's cross-assignment of error.  With respect to the issues raised in Guan's assignments of error four through six referencing the management of AdSTM, this Court lacks jurisdiction to decide those matters and therefore transfers those matters to the Virginia Supreme Court for their consideration of the issues raised.

## I.  BACKGROUND[2]

Under settled principles of appellate review, we view the facts in the light most favorable to the prevailing party in the trial court, and we grant that party the benefit of any reasonable inferences flowing from the evidence presented.  Congdon v. Congdon, 40 Va. App. 255, 258 (2003). We therefore view the facts in this case in the light most favorable to Ran.

We previously held in Guan I that (1) it was error to deny Guan any of the alimony initially provided in the parties' Parenting, Support, and Property Settlement Agreement

---

[1] See Guan v. Ran, No. 0968-16-4 (Va. Ct. App. Feb. 7, 2017) ("Guan I").

[2] Because of the lack of jurisdiction to address Guan's assignments of error four, five, and six, we will not discuss the facts associated with the management of AdSTM.  As described below, record numbers 1375-18-4 and 0817-19-4 will be transferred to the Supreme Court pursuant to Code § 8.01-677.1.

("PSA"), (2) the trial court erred when it found that Guan had breached the October 15, 2008 amendment to the PSA ("amendment"), and (3) the trial court must reconsider the issue of attorney's fees given the above holdings.

Since this Court previously decided that Guan had not breached the PSA amendment, this case was remanded to the trial court solely to recalculate the amount of money owed to Guan and to reconsider the attorney's fees awarded in light of the decision remanding the case.

A remand hearing was held on August 27, 28, and 29, 2018. Ran's expert witness, Stuart Rosenberg ("Rosenberg"), amended his previous expert report, testifying that since Guan had not breached the PSA amendment in October of 2014, per our ruling in Guan I, his amended calculation of the amount Guan was owed did not revert back to the PSA. Before Guan I, the accounting used the assumption that Guan had breached the PSA amendment in October of 2014 and used November 1, 2014 as the date in which the parties reverted back to the original PSA due to Paragraph 17 of the PSA amendment. Guan did not object to the entry of Rosenberg's amended report into evidence.

Rosenberg's amended report was consistent with the original accounting he previously performed in the 2014 dispute. Moreover, Guan did not object to the original report at trial and failed to assign error to Rosenberg's original accounting on appeal to this Court in Guan I. During the remand hearing, Rosenberg opined that based on this Court's mandate, he independently recalculated the amount Ran owed to Guan and determined that Ran owed Guan an additional $23,899.

For the first time, during the remand hearing, Guan argued that Rosenberg's accounting was insufficient because it did not take into account Paragraphs 5, 7, 11, and 14 of the PSA amendment which, if taken into consideration, would have provided her with additional funds in excess of the amounts due to her as indicated in Rosenberg's amended report.

- 3 -

The paragraphs cited by Guan, for the first time on remand, provided for additional potential compensation, expenses, and profits related to work Guan was to have performed related to a modeling and simulation division of AdSTM, as well as, contemplated business development Guan was to perform in New York and Boston. However, testimony adduced during the remand hearing established that Guan had not performed any of the contemplated work, including business development in New York or Boston. In fact, no simulation or modeling division was ever established entitling Guan to any payments over and above those calculated in Rosenberg's amended report. Finally, the trial court determined that a payment of $747,566, which was paid to Guan in the fourth quarter of 2017, represented past due compensation that the trial court credited in partial satisfaction of what Ran owed Guan pursuant to Rosenberg's amended calculation.

ATTORNEY'S FEES

During the remand hearing, Guan submitted the identical attorney's fees and cost affidavit that she had submitted during the 2014 dispute, as well as an updated affidavit in the additional amount of $262,242.91 which included fees incurred in preparation for the remand hearing.

On February 5, 2019, the trial court, following the remand hearing, ruled, in pertinent part, that

> With regard to the amount owed under the Amendment, the Court found the testimony of the Defendant's expert,
> Mr. Rosenberg, as well as the testimony of his lay witnesses to be entirely credible. This was particularly so when considered in light of the testimony of Ms. Guan, which this Court found to be not only uncorroborated by any independent evidence but often incredible.
>
> The Court therefore finds that the amount owed by Defendant to Plaintiff under the amendment to be $23,899.

- 4 -

> As the prevailing party as found by the Court of Appeals, Plaintiff
> is entitled to recover her reasonable fees and costs on the issues
> upon which she prevailed. . . .
>
> After scrutinizing the documents submitted in support of the fee
> application the Court finds that an award of fees to Plaintiff [Guan]
> in the amount of $350,000 is appropriate in this matter for the
> expenses incurred by Plaintiff at the trial of this matter.

On February 11, 2019, Ran filed a motion to reconsider with respect to the trial court's ruling that Guan was entitled to $350,000 in fees and costs. The trial court entered an order denying the motion to reconsider on March 7, 2019.

On March 25, 2019, Ran filed a separate motion for attorney's fees and costs. Ran provided the trial court with a detailed apportionment to each issue presented upon remand. On June 3, 2019, the trial court entered a final order, which included an award to Guan of an additional $81,000 in fees and costs upon remand, finding that she was the prevailing party.

On June 13, 2019, Guan filed a motion to suspend the June 3, 2019 final order and a motion to reconsider that order which the trial court denied by letter opinion dated June 24, 2019.

Almost immediately, the parties filed additional claims regarding the amendment and the PSA. Ran alleged multiple breaches of the amendment by Guan directly related to the operation and management of AdSTM. As a result, the trial court ultimately issued a permanent injunction against Guan related to the operation of AdSTM on May 22, 2019. These appeals followed.

## II. ANALYSIS

### A. MANDATE RULE

On appeal, Guan contends that the trial court erred by failing to follow this Court's mandate from Guan I to recalculate the amounts owed to her "under the terms of the amendment." Specifically, Guan alleges that the trial court did not apply Paragraphs 5, 7, 11, and 14 of the PSA amendment, and failed to use the date the amendment was signed, October 15, 2008, as the start date for the redetermination of her damages.

- 5 -

"A trial judge is bound by a decision and mandate from [an appellate court], unless [the court] acted outside [its] jurisdiction." Rowe v. Rowe, 33 Va. App. 250, 257 (2014). A trial court has no discretion to disregard a lawful mandate. Id. "The mandate rule, itself an application of the law-of-the-case doctrine, forecloses further litigation of 'issues expressly or impliedly decided by the appellate court.'" Virginia Imports, Ltd. v. Kirin Brewery of Am., LLC, 50 Va. App. 395, 407 (2007) (quoting United States v. Bell, 5 F.3d 64, 66 (4th Cir. 1993)).

In Guan I, our mandate to the trial court was "to recalculate amounts owed to Guan under the terms of the October 15, 2008 amendment as if she had not breached that amendment." Guan argues that the trial court must reinterpret both the PSA and the amendment to determine the appropriate methodology for calculating her damages. We disagree.

During the 2014 litigation that led to our decision in Guan I, Rosenberg's accounting methodology ceased use of the PSA amendment effective October 14, 2014, the date on which Ran alleged that Guan breached the PSA amendment by bringing an action to collect spousal support. Guan appealed that decision on the limited issue that her request for spousal support did not breach the PSA amendment. We reversed and remanded that decision to the trial court with a mandate to recalculate the amount owed to Guan consistent with our decision and to reconsider the attorney's fee award in light of the reversal and remand. Guan failed to appeal Rosenberg's methodology contained in his original expert report calculating the amount owed to her in Guan I. Our mandate simply required the trial court to take into consideration our determination that Guan was not in breach when making the new calculation of amounts owed to her.

In reaching its ruling, the trial court stated "I think that the combination of the mandate rule and law of the case rule confines the litigation to this point from the date of the amendment up to the date of what I found to be the breach to Mr. Rosenberg's figures."

- 6 -

Under the law of the case doctrine, when a party fails to challenge a decision rendered by a court at one stage of litigation, that party is deemed to have waived the right to challenge that decision during later stages of the "same litigation." The law of the case doctrine applies both to issues that were actually decided by the court and also to issues necessarily involved in the first appeal, whether actually adjudicated or not. See Miller-Jenkins v. Miller Jenkins, 276 Va. 19, 26 (2008).

Because Guan did not appeal the methodology used by Rosenberg in the initial appeal, the trial court was not required to relitigate that issue from the beginning. Instead, the trial court correctly followed our mandate to recalculate the amounts owed to Guan using the same methodology that it had originally employed under the incorrect assumption that Guan had breached the PSA amendment on October 14, 2014.

On remand, Rosenberg provided the trial court with his corrected accounting using the same method but reflecting that Guan had not breached the PSA amendment on October 14, 2014. Based on Rosenberg's analysis, the trial court found that an additional $23,899 was owed to Guan. Since Guan previously failed to appeal Rosenberg's methodology and resulting calculations in Guan I, the resulting calculations derived therefrom became the law of the case and cannot be raised on appeal for the first time following remand.

Additionally, even if the trial court had used the October 15, 2008 date to begin the recalculation of damages, as Guan requested, the amount owed to Guan would not have changed. Rosenberg's analysis from October 15, 2008, to the date of the alleged breach on October 14, 2014, would have been the same. The trial court, therefore, correctly applied our mandate from Guan I.

## B. Expert Report

In addition to Rosenberg's methodology, Guan assigns error to the trial court for failing to consider additional amounts due to Guan pursuant to Paragraphs 5, 7, 11, and 14 of the PSA amendment. Specifically, Guan contends that she is owed an additional $517,711 under Rosenberg's methodology. Guan also assigns error to the trial court for applying retroactive payments made to Guan against the recalculated amount owed to Guan by Ran.

The pertinent provisions of the PSA amendment state as follows:

> 5. Guan . . . will lead modeling and simulation division and will have up to a $50,000 per year budget *if needed*.
>
> 7. Guan and Ran . . . shall have the same salary and bonus, other benefits and the profit distribution from AdSTM.
>
> 11. AdSTM shall provide Guan and/or Ran . . . $1,300 per month of business expenses . . . .
>
> 14. Ran requests Guan to develop business in Boston and New Jersey areas, for up to six trips per year. AdSTM shall pay for and reimburse all travel, hotel, and per diem cost for those trips. This is not part of the $1,300/month expenses.

(Emphasis added).

The trial court determined that Guan had not performed any work for AdSTM during the time period of the recalculation including any business development in Boston or New York. In addition, the modeling and simulation division that was to have a discretionary budget of $50,000 never existed. Finally, Jen Kim, the VP/Controller for AdSTM, testified that the $747,566 sent to Guan in the fourth quarter of 2017 was past due compensation for the period from November 1, 2014, through August 31, 2017. The trial court properly found that this payment was retroactive compensation that should be credited against what Ran owed Guan. In reaching its ruling, the trial court found that Ran's evidence was credible, noting Rosenberg's amended expert report filed June 28, 2018, that took into consideration the compensation Ran

had paid Guan in 2017. Additionally, the trial court found Guan's contentions and testimony in the trial court "to be not only uncorroborated by any independent evidence but often incredible," including the additional $517,711 Guan claimed she is owed based on Rosenberg's accounting, and ruled that the $747,566 was past due compensation to be credited against what Ran owed Guan. Findings of fact will not be set aside unless they are plainly wrong or without evidence to support them. See Manchester Oaks Homeowners Ass'n v. Batt, 284 Va. 409, 423 (2012). Since these factual findings are not plainly wrong or without evidence in the record to support them,[3] the trial court did not err in relying on Rosenberg's amended expert report.

### C. ATTORNEY'S FEES

Both parties present assignments of error regarding the award to Guan of attorney's fees from the 2014 litigation. Guan contends that the trial court erred when it failed to award her *all* her reasonable attorney's fees. Ran contends that the trial court erred when it awarded Guan fees from the 2014 litigation and did not award him fees for the issues in which he prevailed. Finding no error, we affirm the ruling of the trial court.

The interpretation of a contract containing an attorney's fees provision is a question of law that this Court reviews *de novo*. Plunkett v. Plunkett, 271 Va. 162, 166 (2006). The decision on an award of pre-judgment interest is reviewed under the abuse of discretion standard. Ragsdale v. Ragsdale, 30 Va. App. 283, 292 (1999). Post-judgment interest, however, is mandatory and reviewed *de novo*. Mayer v. Corso-Mayer, 62 Va. App. 713, 724-25 (2014).

In Guan I, we provided the framework for the trial court to determine the amount of attorney's fees to award upon remand. Citing West Square, L.L.C. v. Commc'n Techs., Inc., 274

---

[3] Guan additionally alleges that Ran was diverting salary through another company, Qi Tech, to not pay her the same amount per the amendment. However, this was litigated in the 2014 litigation, and Guan did not appeal the finding of the trial court that Ran was not diverting salary through Qi Tech.

Va. 425 (2007), we stated, "a prevailing party under a similar contractual provision 'is not entitled to recover fees for work performed on unsuccessful claims.'"

Guan received an award of fees of $350,000[4] after the trial court went to great lengths to determine which party prevailed on which issue. Both parties submitted affidavits referencing the costs and fees expended both in the 2014 litigation and in the remand litigation. Making the trial court's determination more difficult was the fact that Guan's affidavits and supporting documentation failed to apportion the fees among each of the issues that were litigated in both the 2014 hearing and the hearing upon remand.

Ran additionally contends in his cross-assignment of error that he should also have been awarded fees and costs on the remand litigation. In support of his assertion, Ran alleges that because Guan's position was that she was still entitled to $4,722,464 upon the recalculation of damages and the trial court only awarded $23,899, Ran was the prevailing party and should be entitled to an award of fees. We disagree.

After considering the issues before it, and the supporting affidavits of attorney's fees and costs, the trial court awarded an additional $81,000 in fees to Guan for the costs and fees incurred during the remand litigation as the prevailing party. Generally, an award of attorney's fees is reviewed for an abuse of discretion. See Manchester Oaks, 284 Va. at 429. Finding no abuse of discretion, we affirm the decision of the trial court with respect to declining to award pre-judgment fee interest and the total amount of fees awarded to Guan. Further, we decline Ran's assertion that no fees should have been awarded in the 2014 litigation and that he should be entitled to fees from the remand litigation.

---

[4] Ran paid this amount. Guan assigns error to the fact that the trial court did not award pre- or post-judgment interest. However, Ran paid this amount as soon as the judgment was levied, and Guan conceded that fact at the trial court.

D. JURISDICTIONAL ISSUES

Guan's additional assignments of error directly involve the operation and management of AdSTM. These assignments of error are presented to this Court from an appeal of a motion *in limine* and the issuance of a permanent injunction against Guan. The trial court declined Guan's motion *in limine* regarding her alleged 51% ownership of AdSTM on August 8, 2018, to which Guan appealed in Record Number 1375-18-4. Additionally, in Record Number 0817-19-4, Guan appealed the May 22, 2019 order granting Ran's rule to show cause in which the trial court found that (1) Guan breached the amendment, (2) Guan was to be held in contempt for violating the prior orders of the court, (3) pursuant to Paragraph 17 of the amendment, the PSA now became the governing document for AdSTM, (4) Guan was to be permanently enjoined from decisions regarding the operation of AdSTM, (5) Guan was to be permanently enjoined from representing to third parties that she owns 51% of AdSTM, and (6) Ran is to be awarded attorney's fees in the amount of $71,164.25. As these rulings do not involve the appellate jurisdiction of the Court of Appeals, the remaining assignments of error, and the record numbers associated with them, must be transferred to the Supreme Court pursuant to Code § 8.01-677.1.

Code § 17.1-405 limits the jurisdiction of the Court of Appeals, in relevant part, to

> Any final judgment, order or decree of a circuit court involving:
> a. Affirmance or annulment of a marriage;
> b. Divorce;
> c. Custody;
> d. Spousal or child support
> e. The control or disposition of a child;
> f. Any other *domestic relations matter* arising under Title 16.1 or Title 20[.]

Code § 17.1-405(3) (emphasis added). "A suit for divorce . . . does not involve an appeal to the general jurisdiction of the equity forum." Reid v. Reid, 245 Va. 409, 413 (1993) (alteration in original) (quoting McCotter v. Carle, 149 Va. 584, 592 (1927)). "The many limitations, both in respect to jurisdiction and procedure, placed upon divorce suits by the statute, differentiate the

divorce case from ordinary suits in equity," id. (quoting McCotter, 149 Va. at 593), and "[j]urisdiction in divorce suits may not be acquired inferentially or through indirection because divorce in Virginia is a creature of statutes enacted in clear, detailed language," Steinberg v. Steinberg, 11 Va. App. 323, 328-29 (1990).

Here, Guan again presents this Court with issues in the PSA and the amendment that are not related to domestic relations matters. See Guan v. Ran, 70 Va. App. 153 (2019) ("Guan II"). The rulings appealed by Guan involve an ongoing dispute over the management and operations of AdSTM.[5] As we stated in Guan II, the provisions in the amendment at issue are essentially a shareholder agreement. This matter is an issue of corporate law, not of domestic relations within the purview of this Court.

As this Court does not have jurisdiction, because the issues appealed from are outside the scope of Code §§ 17.1-405 or -406, we transfer Record Numbers 1375-18-4 and 0817-19-4 to the Supreme Court pursuant to Code § 8.01-677.1.

### III. CONCLUSION

The ruling of the trial court is therefore affirmed. Record Numbers 1375-18-4 and 0817-19-4 are transferred to the Supreme Court as they are outside of the scope of this Court's jurisdiction.

Record No. 1375-18-4, transferred.
Record No. 0597-19-4, affirmed.
Record No. 0817-19-4, transferred.
Record No. 1057-19-4, affirmed.

---

[5] Guan additionally assigns error to the trial court finding her in willful contempt of the May 13, 2016 amended final order. Contempt of court is generally within this Court's jurisdiction; however, in this case the trial court's finding of willful contempt was premised on its determination that Guan's actions constituted a willful violation of the trial court's May 13, 2016 amended final order which involved business-related matters outside of this Court's jurisdiction. For that reason, determination of this assignment of error shall also be encompassed within the matters transferred to the Supreme Court for their consideration.