COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Felton, Judges Petty and Beales
Argued by teleconference


TIMOTHY M. BARRETT

v.       Record No. 1332-07-3

COMMONWEALTH OF VIRGINIA,
  DEPARTMENT OF SOCIAL SERVICES,
  DIVISION OF CHILD SUPPORT ENFORCEMENT,
  *ex rel*. V. JILL BARRETT

MEMORANDUM OPINION[*] BY
JUDGE RANDOLPH A. BEALES
APRIL 29, 2008


FROM THE CIRCUIT COURT OF GRAYSON COUNTY
Brett L. Geisler, Judge

Timothy M. Barrett, *pro se*.

Stephanie Cangin, Assistant Attorney General (Robert F.
McDonnell, Attorney General; Craig M. Burshem, Senior Assistant
Attorney General; Beth J. Edwards, Regional Senior Assistant
General; Alice G. Burlinson, Regional Senior Assistant Attorney
General, on brief), for appellee.


Timothy M. Barrett (father) petitioned to amend the child support awarded to V. Jill Barrett

(mother) during their divorce proceedings.  The Grayson County Circuit Court eventually ordered

that father pay $1,950 per month to mother.  (Hereinafter, we shall refer to these proceedings as

those of the "initial trial court.")  Barrett v. Barrett, No. 0992-05-3, 2005 Va. App. LEXIS 458, at

*4 (Nov. 15, 2005) (Barrett I).[1]  Father appealed that award.  This Court found that the initial trial

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.  For this
reason, our discussion of the facts is brief.  The parties are already sufficiently aware of the
posture of this case and the evidence.

[1] The Barretts were also before this Court for review of a child custody order and of their
final decree of divorce.  Barrett v. Barrett, No. 0902-06-3 (Va. Ct. App. Oct. 17, 2006); Barrett v.
Barrett, No. 1123-04-1 (Va. Ct. App. April 26, 2005) (respectively).  As Record No. 0902-06-3

court erred in its application of Code §§ 20-108.1 and 20-108.2 and remanded the case to the trial court. Id. at *7-8. The trial court on remand held new hearings and determined that father owed various amounts of child support to mother.[2] Father now appeals rulings made by the trial court on remand. The Department of Social Services, Division of Child Support Enforcement (DCSE), made a party to the case after the remand, responded to father's appeal, and DCSE filed a cross-appeal. Mother did not file a separate brief. After reviewing the record, we affirm the trial court's rulings.

On appeal, father presents nine questions presented. He contends the trial court on remand erred in 1.) failing to follow the "Mandate Rule" and the "Law of the Case" doctrine; 2.) allowing DCSE to intervene as a party; 3.) continuing his child support obligation after mother was awarded "Sole Legal Custody" of the children; 4.) failing to deduct the full amount of the spousal support award from his income and to add it to mother's income when calculating the amount of his child support obligation; 5.) refusing to deduct father's self-employment taxes from his income; 6.) imputing day care expenses to mother, given the expert testimony was not definitive, some of the children were in school, and the need for day care in general was not proven; 7.) failing to consider all of mother's income, specifically, income she would have made if she started working immediately after the parties separated, gifts from her parent, and her income in the "Immediately Foreseeable Future"; 8.) determining father's income contrary to the evidence presented; and 9.) determining the arrearage owed by father. DCSE raises one additional issue, arguing that the courts that have considered this case never acquired jurisdiction

_____

and Record No. 1123-04-1 are not directly related to the appeal here, we refer only to Record No. 0992-05-3 as Barrett I for the purposes of this appeal.

[2] Based on events in the parties' lives, and the timing of the courts' various rulings in the past, the trial court on remand found it necessary to determine child support for three different time periods. None of the parties objected to this procedure.

to modify the child support because "the only pleading was a petition by the father to receive child support from mother" and, therefore, the courts had no authority to amend the child support award received by mother.

For review of these issues, "we are guided by the principle that decisions concerning child support rest within the sound discretion of the trial court and will not be reversed on appeal unless plainly wrong or unsupported by the evidence." Barnhill v. Brooks, 15 Va. App. 696, 699, 427 S.E.2d 209, 211 (1993).

## I. Mandate Rule and Law of the Case

Father argues that the trial court on remand erred by taking evidence after the case was sent back by this Court. He argues that the trial court should have used the Statement of Facts filed in Barrett I to comply with this Court's mandate that the court on remand consider the provisions of Code §§ 20-108.1 and 20-108.2. Father contends that the mandate rule requires the court on remand to consider only the facts heard by the initial trial court, as represented in the Statement of Facts filed with that appeal. We disagree.

"The mandate rule, itself an application of the law-of-the-case doctrine, forecloses further litigation of 'issues expressly or impliedly decided by the appellate court.'" Virginia Imports, Ltd. v. Kirin Brewery of Am., LLC, 50 Va. App. 395, 407, 650 S.E.2d 554, 559 (2007) (quoting United States v. Bell, 5 F.3d 64, 66 (4th Cir. 1993)). "When a case is remanded to a trial court from an appellate court, the refusal of the trial court to follow the appellate court mandate constitutes reversible error." Rowe v. Rowe, 33 Va. App. 250, 258, 532 S.E.2d 908, 912 (2000).

The opinion in Barrett I stated simply that the case was remanded "for the purposes of compliance with Code §§ 20-108.1 and 20-108.2," the statutes that address child support determinations. 2005 Va. App. LEXIS 458, at *8. This Court did not provide any further

direction to the trial court on remand and did not rule on the underlying facts in the case, other than to find the award of child support in error.

On remand, the trial court reviewed the Statement of Facts, which the initial trial court noted might not be entirely accurate.[3] The trial court on remand then found the Statement of Facts filed in Barrett I was indeed inadequate for its consideration and application of Code §§ 20-108.1 and 20-108.2.

The trial court on remand was required to consider the factors in Code §§ 20-108.1 and 20-108.2. The trial court did not refuse to comply with this mandate on remand. Instead, the trial court found that it actually could not comply with the mandate if the Statement of Facts constituted the only evidence in the case, as that Statement of Facts was inadequate to the task specified in the mandate. As that court was the fact finder in this case, see Richardson v. Richardson, 242 Va. 242, 246, 409 S.E.2d 148, 151 (1991), we must defer to that determination. We find the trial court on remand did not violate the mandate rule by rehearing the evidence and allowing all the parties to present new evidence.[4]

---

[3] The trial judge whose decision was appealed in Barrett I made a notation on the Statement of Facts, identifying several facts that father did not include in the Statement of Facts. This trial judge also acknowledged in his notation that, given the lapse of time between the trial and his review of the Statement of Facts, he could not be certain that the Statement of Facts contained all of the evidence presented to him. On remand, a different judge heard the case.

[4] We note that the issue remanded in Barrett I involved the failure of the initial trial court to use the statutory guidelines for child support before deviating from those guidelines and the failure of the initial court to explain the deviation. The evidence and facts used to set child support were essentially irrelevant to the legal issue raised. Therefore, while the Statement of Facts was sufficient to address the issue raised on appeal in Barrett I, that same Statement of Facts was not necessarily sufficient for the trial court on remand to apply the child support guidelines and consider any deviations from the guidelines pursuant to the Code, as required by the mandate.

II. Alleged Lack of "Jurisdiction"

DCSE argues that the courts never had "jurisdiction" to change the amount of child support awarded to mother as father's initial petition requested only that he be awarded child support. We find this argument without merit.

When these parties divorced, the circuit court hearing the matter awarded child support to mother and referred further child support matters to the juvenile and domestic relations district (JDR) court. Father then filed a petition in JDR court asking that mother be required to pay child support *to him* and listing himself as the petitioner. DCSE claims that, given the request in father's petition, neither the JDR court nor any subsequent court acquired "jurisdiction" to adjust the child support paid *to mother* and, therefore, acted without authority when they amended the award. DCSE contends, in effect, that the courts only had authority to consider whether to grant the specific relief requested by father.[5]

A trial court is not limited to child support requests made by the parties. As Code § 20-108 makes clear, a court can even take action on its own motion:

> The court may, from time to time after decreeing as provided in § 20-107.2, on petition of either of the parents, or on its own motion or upon petition of any probation officer or the Department of Social Services, which petition shall set forth the reasons for the relief sought, revise and alter such decree concerning the care, custody, and maintenance of the children and make a new decree concerning the same, as the circumstances of the parents and the benefit of the children may require.

---

[5] DCSE also argues no court, including the Grayson County JDR court and the Grayson County Circuit Court, ever acquired jurisdiction over this case because father incorrectly listed himself as the petitioning party. Assuming, *arguendo*, DCSE is correct in its position that incorrectly listing a party as the petitioner rather than the respondent is an error in the pleading, no case law is cited to explain why this "error" presents a *jurisdictional* problem for the courts. Under Rule 5A:20(e), therefore, we decline to consider this argument.

Nonetheless, DCSE cites Boyd v. Boyd, 2 Va. App. 16, 340 S.E.2d 578 (1986), to support its position. Boyd, however, reversed an award of spousal support because the wife failed to make *any* request for support in *any* of her pleadings. Id. at 18, 340 S.E.2d 580. The Court explained, "[T]he exercise of such power remains dependent upon the pleadings having raised the issue." Id. at 19, 340 S.E.2d at 580. Here, in contrast, father requested support, and he listed all the children entitled to support. He attached a copy of the original child support order. He checked the box on the petition that asked for "Child support per guidelines." The issue of child support was clearly raised by the petition before the court, and, therefore, the JDR court and all subsequent courts to which an appeal was made clearly acquired "jurisdiction" over this matter and thus had authority to hear and resolve all issues of child support.

We find that father's petition was adequate to give the courts jurisdiction to amend the child support award. As the award is not void, any further argument regarding the inadequacy of the petition was waived and cannot be raised in this appeal as DCSE did not raise this issue in any of the previous proceedings. See Rule 5A:18.

### III. Intervention by DCSE

Father argues that the trial court on remand erred when it allowed DCSE to intervene because the initial trial court denied DCSE's motion to intervene during the proceedings in Barrett I. We find the trial court on remand did not err.

During the proceedings at trial in Barrett I, DCSE served discovery on father. Father then asked the initial trial court to quash that discovery, which that court did. In its order, the initial trial court stated that DCSE:

> is not a party in the above-reference matter in view of the fact that no order had been entered allowing [DCSE] to enter an appearance nor has permission been requested.

> This Order is entered without prejudice to any other proceeding that may be instituted or filed by [DCSE].

- 6 -

Clearly, DCSE is correct – the initial trial court never entered an order on the merits excluding the Division from the case. The record does not support father's argument to the contrary. As the initial court did not exclude DCSE from the case, the trial court on remand did not err by granting the Division's motion to intervene after the case was remanded to the trial court.

## IV. Sole Custody

By court order entered on March 9, 2006, as part of proceedings that are not under review here, mother was awarded "sole legal and physical custody" of the parties' children, and father was awarded visitation once every six weeks.[6] Father argues that, because mother was awarded "sole legal custody" of the children, he is no longer required to pay any child support. We find father still has an obligation to support his children.

In order to terminate all of father's parental rights and make him a stranger to the children, a court must follow very specific procedures for terminating such rights, and those procedures were not used here. See Code §§ 16.1-278.3, 16.1-283. In addition, by its own terms the award of sole custody to mother did not strip father of all his rights and responsibilities. The March 9, 2006 order explicitly reserved to father the right of visitation.

Father cites the definition of "sole legal custody" in Code § 20-124.1 to support his argument. However, that statute reads, in part, "'*Sole custody*' means that one person retains responsibility for the care and control of a child and has *primary* authority to make decisions concerning the child." (Emphasis added.) The language of Code § 20-108.2, discussing "split custody," "shared custody," and "sole custody," also contradicts father's interpretation of the

---

[6] Prior to March 9, 2006, father had shared legal custody of the children and had visitation with them on two weekends each month.

March 9, 2006 order. Under that code section, when one parent has "sole custody" of the children, the other parent still must provide support for those children.

"Sole legal and physical custody," therefore, does not mean that one parent has *all* the responsibility for the children and the other parent has *no* responsibility. The designation "sole" simply means that one parent has significantly more responsibility for the children than the other parent.

Father's parental rights and responsibilities have not been terminated. Therefore, the trial court on remand did not err in ordering him to pay child support.

## V. Credit for Spousal Support

Father argues that the trial court on remand erred by using $423[7] per month as the amount of spousal support in the child support calculations rather than the awarded amount of $500 per month. He contends the Code requires that the amount in the spousal support award be used because that amount is fixed.

When interpreting statutes, courts should consider the clear language of the Code. See Frazier v. Dep't of Soc. Servs., Div. of Child Support Enforcement, 27 Va. App. 131, 134-35, 497 S.E.2d 879, 880-81 (1998). Code § 20-108.2(C)(i) states, "[S]pousal support *received* shall be included in gross income" of the receiving parent when calculating child support. (Emphasis added.) Subsection (i) also addresses the paying parent's income, requiring that "spousal support *paid* shall be deducted from gross income *when paid pursuant to an order or written agreement*." (Emphasis added.) The clear language of the statute, therefore, requires that courts use the amount paid, not the amount awarded. If the legislature meant the amount awarded, then

---

[7] Father argues this figure is incorrect. However, mother testified that she received a total of $20,308 in spousal support from father for 2002 through 2005. The trial court divided $20,308 by 48 months to get $423. This monthly figure is correct.

it could have used the word, "awarded," rather than "paid." <u>See</u> <u>Supinger v. Stakes</u>, 255 Va. 198, 206, 495 S.E.2d 813, 817 (1998) (noting that courts should assume that the legislature chooses the words in a statute with care and should not ignore the plain meaning of those words).

Father argues that the legislature did not intend that courts use the amount of spousal support actually paid because that amount is uncertain. However, Code § 20-108.2(C) includes in the definition of "gross income" many amounts that are not certain or fixed, such as bonuses, gifts, and capital gains. In addition, the paid amount was uncertain here only because father was inconsistent in his payments. If he had followed the court's order regarding spousal support, the amounts would be certain, and the amount paid would be the same as the amount awarded.

The trial court did not err in following the exact language of the statute.

## VI. Trial Court's Discretion

After <u>Barrett I</u>, the trial court on remand held several hearings and awarded different amounts of child support for various time periods, imputing income to mother or making additional adjustments to the child support guidelines. The court on remand also determined the amount of father's arrearage across the time periods. Father's questions presented include various arguments that the trial court abused its discretion when it set these amounts, contending the court on remand miscalculated his income, mother's income, the day care expenses, and the arrearage amount. We disagree with these contentions.

"[D]ecisions concerning child support rest within the sound discretion of the trial court and will not be reversed on appeal unless plainly wrong or unsupported by the evidence." <u>Barnhill</u>, 15 Va. App. at 699, 427 S.E.2d at 211. "A trial court's decision to deviate from the presumptively correct amount of child support based upon imputed income will not be disturbed on appeal if it is supported by the evidence and the trial court has not otherwise abused its discretion." <u>Niemiec v. Dep't of Soc. Servs., Div. of Child Support Enforcement</u>, 27 Va. App.

446, 452, 499 S.E.2d 576, 579 (1998).  When reviewing a lower court's decision on child support, this Court views

> the evidence in the light most favorable to the prevailing party, granting her the benefit of any reasonable inferences.  Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 835 (2003).  "That principle requires us to discard the evidence of the appellant which conflicts, either directly or inferentially, with the evidence presented by the appellee at trial."  Id. (citations and internal quotation marks omitted).

Owens v. Owens, 41 Va. App. 844, 848-49, 589 S.E.2d 488, 491 (2003).  As mother prevailed in the trial court, we examine the evidence in this case in the light most favorable to her.

### A.  Self-Employment Tax

Father argues that the trial court on remand should have deducted half of his self-employment taxes from his income, pursuant to Code § 20-108.2(C)(4)(ii).

Although father testified that he was "required" to pay self-employment taxes, he presented no evidence that he actually did.  He presented no evidence regarding the actual amount of self-employment taxes that he allegedly paid.  The documents presented to the court proved that, at least at the time of the bankruptcy, father's company paid payroll taxes on his income.  Therefore, the evidence supports the trial court's finding that father actually did not pay self-employment taxes.

The trial court on remand did not abuse its discretion by calculating the support guidelines without including self-employment taxes.

### B.  Day Care Expenses

Father argues that the trial court on remand erred in accepting the expert testimony of Natalie Osborne regarding the cost of day care and erred in including day care expenses in the child support calculations when it imputed income to mother.  We find the trial court did not abuse its discretion.

- 10 -

"Generally, the admissibility of evidence 'is within the broad discretion of the trial court, and an [evidentiary] ruling will not be disturbed on appeal in the absence of an abuse of discretion.'" Surles v. Mayer, 48 Va. App. 146, 177, 628 S.E.2d 563, 578 (2006) (quoting Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988)) (brackets in original).

Father did not object to Ms. Osborne's testimony regarding the cost of day care until after she was excused as a witness. The trial court found this objection was not timely. Father responded, "Okay."

Father did not object when the testimony was given, as required under Doherty v. Aleck, 273 Va. 421, 426, 641 S.E.2d 93, 95-96 (2007). The trial court, therefore, did not abuse its discretion in following this rule and accepting Ms. Osborne's testimony on the cost of day care.

Father also argues that the trial court on remand should not have deducted day care expenses from mother's imputed income as his evidence proved she did not need day care. However, the trial court rejected father's evidence and accepted mother's testimony that she would need day care after school for all of the children if she were teaching, the job that father argued should be the basis of imputing income to mother.

When imputing income, a trial court considers the factors in Code § 20-108.1 and has discretion to weigh these factors as the equities dictate. Niemiec, 27 Va. App. at 451-52, 499 S.E.2d at 579. The trial court on remand did not abuse its discretion in accepting mother's evidence and including in its calculations of child support the cost of day care for all of the children as a deductible expense that mother would need to pay if she were teaching.

### C. Mother's Income

Father argues that the trial court on remand erred by not using a higher figure for imputing income to mother, by not including monetary gifts from her parents as part of her

income, and by failing to include her income in the "immediately foreseeable future." We find the trial court did not abuse its discretion in its determinations of mother's income.

Father asked the trial court on remand to base its imputation of income to mother on income figures that assumed previous teaching experience, which mother did not have. He cites no case law to support his position that the court should have presumed that mother started working immediately after the separation and should have based its imputation on that presumption. In fact, the case law suggests otherwise. In Mir v. Mir, 39 Va. App. 119, 129, 571 S.E.2d 299, 304 (2002), this Court explained, "'The trial court's award must be based upon circumstances in existence *at the time of the award* and not upon speculation or conjecture'" (quoting Niemiec, 27 Va. App. at 452, 499 S.E.2d at 579) (emphasis added).

The evidence supported the figures that the court on remand used to impute income to mother. Therefore, the trial court did not err in refusing to use the higher figures advocated by father.

Father also argues that the trial court on remand should have included various gifts in mother's income. Mother and Gary Rhudy (her father) testified that these "gifts" were loans. The trial court, as fact finder, evaluated this testimony and found the "gifts" were loans from Rhudy. Although the testimony was not entirely consistent, the record contains sufficient evidence to support the trial court's finding. Therefore, we hold the court did not abuse its discretion when it concluded the "gifts" from Rhudy were actually loans. Under Code § 20-108.2(C), courts are not required to include loans in child support calculations. Therefore, the trial court did not err by omitting these figures from mother's income.

Finally, father argues the evidence proved that mother's income would increase in the "immediately foreseeable future" when she began working through "TANF,"[8] so the trial court on remand should have included that income in its calculation of child support. Father's argument is based on a mischaracterization of the evidence.

Mother testified that she would soon need to work thirty-five hours a week to continue receiving TANF assistance. However, mother also explained that she would be ineligible for this assistance once father actually paid his child support. Therefore, once the trial court on remand awarded child support, assuming father would pay it, mother would not be eligible for TANF assistance and would not begin working thirty-five hours a week under the TANF program.[9]

The trial court on remand did not abuse its discretion when it assumed that father would pay his court-ordered child support and that mother, therefore, would not begin working through TANF. Therefore, the court did not err by failing to include that income in the child support calculations.

## D. Father's Income

Father argues that the trial court on remand committed errors in determining his income and committed legal error when it imputed income to him. We find the trial court did not err.

Parts of father's bankruptcy filings were admitted into evidence for the court to consider on remand. Those documents indicated that father was paid $5,100 per month through his law firm. Although father claimed he made less than $5,100 per month when he last practiced law,

---

[8] "TANF" is the acronym used to reference a public assistance program called Temporary Assistance for Needy Families. See, e.g., Code § 63.2-100.

[9] Mother earned money as a substitute teacher. The trial court averaged the amount mother previously earned and attributed this income to her when it calculated the final award of child support. Father's argument to the contrary is not supported by the record.

he also claimed that his income continued to go up or remained unaffected by his circumstances after the bankruptcy.

Father never presented any documents to substantiate his testimony regarding the amount of his income. The only document produced, and the one that the trial court believed, was his bankruptcy filing. We cannot find the trial court abused its discretion in accepting this document and rejecting father's self-serving testimony.

Father also argues the trial court on remand had no authority to impute income to him as he was working and no other job was available to him. Father misunderstands the law.

A trial court can impute income to a parent when it is proven that the parent is "voluntarily foregoing more gainful employment, *either* by producing evidence of a higher-paying former job *or* by showing that more lucrative work was currently available." Niemiec, 27 Va. App. at 451, 499 S.E.2d at 579 (emphasis added). See also Brody v. Brody, 16 Va. App. 647, 651, 432 S.E.2d 20, 22 (1993). Contrary to father's position, therefore, the fact that he was working did not preclude the court from imputing income to him.

The trial court on remand found that, if father's income was less than $5,100 per month, it was because he lost his license to practice law. The evidence proved that, when father had a law practice, he made $5,100 per month; after his license to practice law was suspended, father claimed he made $3,300 per month.[10] Once the trial court determined father's income was $5,100, father needed to justify any decrease in that income and explain that it occurred through no fault of his own. See Hatloy v. Hatloy, 41 Va. App. 667, 672 n.3, 588 S.E.2d 389, 391 n.3 (2003). The trial court on remand could legitimately presume that, if father actually made $3,300 per month, the loss of his law license caused this decrease, especially as father never

---

[10] There is no evidence in the record that father ever returned to the practice of law.

provided an alternative explanation.  Therefore, the trial court had sufficient evidence to find that father was voluntarily under-employed, especially as he admitted that he also works for his new wife, but receives no salary or other income from her.

The court on remand did not err when it imputed income to father.

### E.  Arrearage

Father claims that the trial court on remand, when it calculated his support payment arrearage, did not take into account all of the money that he had paid.

The trial court considered the evidence from DCSE regarding father's payments.  The DCSE records included payments that father made both before and after he filed for child support in March of 2002.  The trial court accepted this evidence regarding payments, and father did not present any evidence that directly contradicted these figures.[11]  As there is evidence to support the arrearage finding, we cannot find the trial court abused its discretion.

### VII.  Conclusion

For the reasons stated above, we find the court on remand did not err in its award of child support to mother nor did it err in its rulings on any of the aforementioned issues.  Therefore, we affirm the trial court.

Affirmed.

---

[11] Father claims the circuit court was bound by the JDR court's determination of the arrearage that existed before he filed the petition in that court.  However, as father appealed that order, the JDR court's finding became a nullity and was not binding on the circuit court.  See Mahoney v. Mahoney, 34 Va. App. 63, 66, 537 S.E.2d 626, 628 (2000) (*en banc*).